UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In the Matter of:

    Rex Printing Company,

        Debtor.
_____/

Chapter 11
Case No. 18-55671-pjs
Hon. Phillip J. Shefferly

**FIRST AMENDED**
**COMBINED CHAPTER 11 PLAN OF REORGANIZATION AND**
**DISCLOSURE STATEMENT**

**NOW COMES** the Debtor herein, **Rex Printing Company,** by and through its attorney, JAY S. KALISH, and in connection with its Chapter 11 Petition, filed on November 20, 2018 (the "Petition Date"), in accordance with the provisions of the United States Bankruptcy Code, the February 12, 2019 Order Setting Deadline for Filing Combined Plan of Reorganization and Disclosure Statement and Scheduling Further Proceedings and the July 22, 2019 Order Regarding Preliminary Approval of Debtor's Disclosure Statement, hereby proposes and files its First Amended Combined Chapter 11 Plan of Reorganization and Disclosure Statement under Chapter 11 of the United States Bankruptcy Code as follows:

**I. THE PLAN OF REORGANIZATION**

ARTICLE I
DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

    A. CLASS 1 - Expenses of Administration. All expenses of administration herein and fees and charges entitled to priority under Section 507(a)(1) of the United States Bankruptcy Code shall comprise this Class.

    B. CLASS 2 – The Priority claims of the State of Michigan shall comprise this class.

    C. CLASS 3 – The Secured claims of the Macomb County Treasurer shall comprise this class.

    D. CLASS 4 – The Secured claim of the State of Michigan shall comprise this class.

1

E. CLASS 5 – Unsecured or Undersecured claims without priority shall comprise this class.

F. CLASS 6 – The claims of the Corporate Shareholder shall comprise this class.

ARTICLE II
SPECIFICATION OF TREATMENT OF CLASSES OF
CLAIMS OR INTERESTS NOT IMPAIRED UNDER
PLAN AND THOSE IMPAIRED UNDER PLAN

A. CLASS 1. Class 1 contains the expenses of administration which include professional fees and administrative priority creditors. Projected professional fees total approximately Ten Thousand ($10,000.00) Dollars. This includes fees for the debtor's attorney and accountant. This figure includes a Nine-Thousand ($9,000.00) Dollar retainer previously paid to the Debtor's attorney in connection with the chapter 11 matter. These fees are subject to approval by the Court. Other creditors in this class include the claims of post-petition trade creditors who have extended credit during the pendency of the chapter 11 or taxing authorities that have accrued but unpaid post-petition tax obligations. Creditors in this class who are unpaid, including any unpaid fees due and owing to the Office of the United States Trustee, will be paid in full either in accordance with the credit terms that the parties have agreed upon or upon the effective date of the Plan. This class is unimpaired.

B. CLASS 2. Class 2 includes the priority claims of the State of Michigan.

The State of Michigan, Department of Treasury has filed a claim in the amount of $30,299.50 for unpaid Michigan Sales Tax. The priority claim of the State of Michigan, Department of Treasury shall be paid in 72 monthly installments of $420.82 commencing 60 days after confirmation of the Debtor's Plan. No penalties not assessed prior to the Petition Date will be assessed or allowed. This class is impaired.

Class 2 also includes the priority claim of the State of Michigan, Unemployment Insurance Office for unpaid unemployment insurance in the total amount due of $3,225.69. The priority claim of the State of

Michigan, Unemployment Insurance Office shall be paid in 72 monthly installments of $44.80 commencing 60 days after confirmation of the Debtor's Plan. No penalties not assessed prior to the Petition Date will be assessed or allowed. This class is impaired.

C. CLASS 3. Class 3 includes the secured claim of the Macomb County Treasurer. This creditor's claim has been fully satisfied and this creditor filed a satisfaction of claim on March 25, 2019. This class is unimpaired.

D. CLASS 4. Class 4 includes the secured claim of the State of Michigan, Department of Treasury in the amount of $17,509.30. This creditor's lien is uncollateralized and, accordingly, will be treated as an unsecured creditor. This class is impaired.

E. CLASS 5. Class 5 includes the claims of all unsecured or undersecured creditors without priority. Creditors in this class include, without limitation, the claims of all creditors who filed claims and all other non-contingent, non-disputed or liquidated unsecured creditors including the State of Michigan Department of Treasury in the amount of $17,509.30, Millcraft Paper Company in the amount of $8,432.00, Gatherall Bindery in the amount of $2,062.37 and DTE Energy in the amount of $1,224.81. Creditors in this class shall be paid 5% of their claims in 72 monthly installments of their prorata share of $20.29 per month commencing 60 days after confirmation of the Debtor's Plan. This class is impaired.

F. CLASS 6. Class 6 consists of the Debtor's shareholder, Theresa Ciavola, who will retain her interest in the Debtor subject to the provisions of the within Plan of Reorganization. The Debtor shall be vested with the property of the estate upon confirmation of this Plan of Reorganization, subject to the rights of the above mentioned creditors.

## ARTICLE III
## EXECUTORY CONTRACTS

Any executory contracts or unexpired leases of the debtor that have not been previously assumed pursuant to the provisions of 11 USC § 365 and 11 USC § 1123, are deemed rejected. With respect to those executory contracts previously assumed, the debtor shall continue to be bound by the terms of any Order entered assuming the executory contract.

## ARTICLE IV
## CLAIMS AND EFFECTS OF CONFIRMATION

Confirmation of this Plan of Reorganization shall not discharge debtor from any debt, (a) which arose prior to the date of confirmation which is within Class 2, 3, 4, or 5 or (b) with respect to which a claim (i) is deemed to have been filed under 11 USC § 501 or (ii) is filed within the time permitted by the Bankruptcy Rules or Order of the Court until payment of such debt in accordance with the provisions of this Plan.

## ARTICLE V
## RETENTION OF JURISDICTION

A. The Court shall retain jurisdiction to allow and disallow claims not allowed or disallowed prior to confirmation. Debtor shall have sixty (60) days after the date of confirmation to object to the timely claim of any creditor. There shall be no time limit imposed upon the debtor to object to any claim not timely filed or deemed filed.

B. The Court shall further retain jurisdiction to hear and determine any controversy pending as of the date of confirmation before this Court and for the purpose of granting any injunction as may be necessary or desirable to effectuate the purpose of the Plan of Reorganization.

C. The Court shall further retain jurisdiction to enter orders allowing compensation to those persons so entitled to receive compensation pursuant to the Bankruptcy Code, and to hear and determine all

controversies relating to the obligations of the Debtor-In-Possession incurred in the conduct of the debtor's business prior to confirmation.

D. The Court shall further retain jurisdiction until payment has been accomplished under the Plan.

## ARTICLE VI
## EFFECTIVE DATE OF PLAN

This Plan shall be effective on the 60th day after the date of the Order Confirming the Plan becomes final and nonappealable.

## ARTICLE VII
## COSTS AND EXPENSES INCURRED AND UNPAID
## OBLIGATIONS OF THE DEBTOR-IN-POSSESSION

The debtor shall pay all costs and expenses of this reorganization as allowed by the Court upon the entry of the appropriate Order so allowing said costs and expenses.

## ARTICLE VIII
## UNITED STATES TRUSTEE

The debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of an order confirming the Plan and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period.

**II. DESCRIPTION OF THE DEBTOR.**

A. The Debtor is a Michigan limited liability company that is reorganizing and continuing its business. The Debtor has been in business since 1930 and is a third generation family owned commercial printing business. The sole owner/operator of the Debtor is Theresa Ciavola who has been managing the Debtor's business for the last 29 years.

B. The principal of the business is Theresa Ciavola.

1. Theresa Ciavola has been working in the printing business for most of her adult life and has been managing the business for the last 29 years.

2. Salary, compensation, draw or other remuneration.

The Debtor pays the business related expenses of Theresa Ciavola who also draws a minimal salary.

3. Theresa Ciavola owns 100% of Rex Printing Company. Theresa Ciavola has no relationship with any other creditor of the estate.

C. Description and History of Business.

As set forth above, the Debtor has been in business since 1930 and is a third generation family owned commercial printing business. The causes for the Chapter 11 filing are related to significant technology changes in this industry and increased costs associated with these changes. The result was an inability to pay current sales tax obligations.

### III. POST PETITION EVENTS OF SIGNIFICANCE

A. As a result of a change in the Debtor's business model outlined below and the Debtor's possession of unusable equipment, the Court entered an Order which permitted the Debtor to retain the R. J. Montgomery Co., to conduct an auction of all of the Debtor's old equipment.

The change in the Debtor's business model from an in-house company-owned asset-based operation to an in-house design studio using outside-owned printing equipment has resulted in a significant uptick in the Debtor's profitability.

Other than the aforementioned auction sale, there have been no post-petition transfer of assets outside the ordinary course of business.

B. An Order Permitting the Use of Cash Collateral and Approving Auction Sale of Equipment was entered by the Court on January 11, 2019. The Order provided for the payment of auction proceeds to

secured creditor, Macomb County Treasurer. In accordance with that Order, the Macomb County Treasurer was paid in full upon the completion of the auction sale.

C. The Debtor has engaged in the following litigation during the pendency of the chapter 11:

1. Rejection of its prior premises lease with Mancini Enterprises, RMT, LLC.

This litigation was resolved by the creditor utilizing a portion of the Debtor's security deposit and concluding the matter on that basis.

## IV. LIQUIDATION ANALYSIS

A.

    I. Valuation of Assets and Amount(s) Secured Claims in Relation Thereto as of July 29, 2019

| Describe the Assets and Collateral | Creditor Holding Lien | Market Value and Forced Sale Value | Amount of Secured Claim | Equity | Comments |
|---|---|---|---|---|---|
| Machinery & Equipment | State of Michigan | $0 | $17,509. | $0 | |
| Vehicle(s) *None* | | | | | |
| Inventory *None* | | | | | |
| Pre-Petition Cash *None* | | | | | |
| Pre-Petition Accounts *None* | | | | | |

    II. Proceeds of Assets ($0)

    III. Claims

    (a) Secured Claims.
        State of Michigan, Department of Treasury    $17,509.30

(b)  Administrative Expenses
    UST Fees                    Paid
    Debtor's Attorney           $10,000. ($9,000 retainer paid)
    Debtor's Accountants        Paid
    Appraiser                   Paid
    Unsecured Creditor's
    Committee                   $0
    Post-Petition Payables      Paid
    Post Petition Rent          Paid
    Post Petition Payroll       $0
    Post Petition Taxes         Paid

                        Total           $1,000.00

(c)  <u>Pre-petition Unsecured Priority Claims</u>

    State of Michigan, Department of Treasury              $30,299.50
    State of Michigan, Unemployment Insurance Office       $ 3,225.69

(d)  Total Secured, Administrative and
     Pre-petition Priority Claims                          $52,034.49

IV.  Distribution of Proceeds

(a)  Gross Proceeds                        $0

(b)  Less Total of

Secured Claims                             $17,509.30
Adminstrative Expenses                     $ 1,000.00
Priority Claims                            $33,525.19
Pre-petition Unsecured                     $63,300.50

                    Total                  $115,334.99

(c)  <u>Net Proceeds</u>

    Proceeds Available to Pre-petition
    Unsecured Creditors (including
    deficiency claims) all of which
    total $80,809.80.                      $0

(d)  % Available to Pre-petition
     Unsecured Creditors                   0%

(e) Proceeds Available for
Equity Interests                    $0

Based on the Liquidation Analysis set forth above, the Debtor believes that a liquidation would result in a substantially smaller distribution to every class of its creditors than the proposed treatment set forth in the Plan.

**V. DETAIL REGARDING IMPLEMENTATION OF THE PLAN**

   A. Financial Information Summaries.

1. A summary of the Debtor's pre-petition income tax returns is attached hereto as Exhibit "A".

2. A summary of the Debtor's post-petition sales, expenses and profits (losses) is attached hereto as Exhibit "B1". A detailed analysis of the Debtor's Profit and Loss for January, 2019 through July, 2019 is attached as Exhibit "B2".

3. A description of the Debtor's future operations, expectation forecasts and financial projections as submitted to the United States Trustee is attached hereto as Exhibit "C".

4. As set forth in the Debtor's projections, the Debtor's anticipates that post confirmation sales, expenses and profits will continue for the foreseeable future.

Debtor believes that the plan is feasible based upon the profit margin and the amount need to service the chapter 11 debt.

   B. Debtor proposes to continue the business. The Debtor's business will continue to be operated by Theresa Ciavola. Her compensation will continue as indicated section II 2 above which is approximately $695.00 per week.

   C. Other than the reduction in the Debtor's basis in its equipment, there are no direct tax ramifications to confirmation of the Plan.

**VI. Legal Requirements, as follows:**

A. Voting procedures

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interest, that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are <u>not</u> entitled to vote on the plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who

9

asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 USC § 502 and Bankruptcy Rule 3018.

Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the debtor's attorney by the deadline previously established by the court.

Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the debtor's attorney.

B. Acceptance

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of a least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

C. Confirmation

11 USC § 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under 11 USC § 1129(a) are these:

1. Each class of impaired creditors and interest must accept the plan, as described in paragraph VI.B, above.
2. Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

D.  Modification

    The debtor reserves the right to modify or withdraw the plan at any time before confirmation.

E.  Effect of confirmation

    If the plan is confirmed by the Court:

1. Its terms are binding on the debtor, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.

2. Except as provided in the plan:

    (a)    in the case of a <u>corporation</u> that is reorganizing and continuing business:
    (1) All claims and interests will be discharged.
    (2) Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.

    (b)In the case of a <u>corporation</u> that is liquidating and not continuing its business:
    (1) Claims and interests will not be discharged.
    (2) Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.

    (c)In the case of an individual or husband and wife:
    (1) Claims will be discharged, except as provided in 11 USC §§ 523 and 727(a).
    (2) Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 USC §§ 523 and 727(a).

    See Part II-A of this Disclosure Statement to determine which of the above paragraphs applies in this case.

    REX PRINTING COMPANY

    */s/   Theresa Ciavola   w/Consent*
    By: Theresa Ciavola, President

Dated: July 29, 2019

LAW OFFICES OF JAY S. KALISH, P.C.

*/s/   Jay S. Kalish*
JAY S. KALISH (P26301)
Attorney for Debtor
2000 Town Center, Ste. 1900
Southfield, MI 48075
(248) 932-3000
Dated: July 29, 2019